CONRAD KUDELKA, JR.,

        Plaintiff,

v.                                            Case No. 19-C-11

DR. SCOTT HOFTIEZER,

        Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Conrad Kudelka, a prisoner who is representing himself, filed this action under 42 U.S.C. § 1983, alleging that Defendant Dr. Scott Hoftiezer violated his rights when he prescribed Meloxicam to treat Kudelka's heel pain and failed to warn Kudelka about Meloxicam's potential side effects. On June 8, 2020, Kudelka filed a summary judgment motion, in which he challenges the sufficiency of Dr. Hoftiezer's answer and raises discovery issues that were later addressed by the magistrate judge to whom the case had been referred for pretrial matters. Dkt. No. 40. Kudelka's motion does not comply with the requirements of Civil L. R. 56(b), so the Court will deny the motion. On June 11, 2020, Dr. Hoftiezer moved for summary judgment. Dkt. No. 41. The Court will grant Dr. Hoftiezer's motion and dismiss this case.

### BACKGROUND

On September 6, 2016, Kudelka was admitted to Dodge Correctional Institution for intake processing. Dkt. No. 42 at ¶1. A little more than a week later, on September 16, 2016, Dr. Hoftiezer handled Kudelka's medical intake. *Id.* at ¶24. Dr. Hoftiezer explains that, during a medical intake, new inmates are seen by a team of health care providers to identify and begin treating their acute and ongoing medical issues. *Id.* at ¶¶6-7. Dr. Hoftiezer examined Kudelka and obtained his medical history. *Id.* at ¶25. Kudelka asserts that he informed Dr. Hoftiezer that

he suffered from hypothyroidism and plantar fasciitis, which caused severe heel pain, and that he had had two polyps removed during a routine colonoscopy. Dkt. No. 69 at 5.

Kudelka told Dr. Hoftiezer that he had had right heel pain for more than a year and a half. Dkt. No. 42 at ¶26. He said the pain was greater first thing in the morning but diminished as he walked on it. *Id.* The pain would return if he sat and rested for a bit. *Id.* At the time of the medical intake, Kudelka was taking hydrocodone four times per day for his pain. *Id.* He had never had injection therapy, nor had he taken any non-steroidal anti-inflammatory drugs (NSAIDs) for his symptoms. *Id.*

Dr. Hoftiezer's plan of care for Kudelka's plantar fasciitis was a home exercise program for foot stretching and a prescription for Meloxicam. Dkt. No. 42 at ¶27. Meloxicam is an NSAID, like ibuprofen, naproxen, and aspirin, which is used to treat pain, fever, and inflammation. *Id.* at ¶¶19-20. Dr. Hoftiezer explains he chose Meloxicam because NSAIDs are a conventional and legitimate treatment for plantar fasciitis and because it is effective when taken only once or twice per day rather than three to times per day as is needed for other NSAIDs. *Id.* at ¶¶21-22. Dr. Hoftiezer wrote a prescription for 7.5mg with food for two weeks, and then with food as needed for six months. *Id.* at ¶27; Dkt. No. 43-1 at 7. He did not renew the Meloxicam prescription after his September 16 order. Dkt. No. 42 at ¶34. Dr. Hoftiezer explains that he directed and wrote that Kudelka should take Meloxicam with food because doing so significantly reduces the risk of side effects like gastric bleeding and ulceration. *Id.* at ¶30.

Kudelka agrees that Dr. Hoftiezer gave him a handout about exercises and a prescription for Meloxicam, but he asserts that Dr. Hoftiezer instructed him to take the Meloxicam with food only if it upset his stomach, which it never did. Dkt. No. 69 at 6. Kudelka asserts that Dr. Hoftiezer never warned him about the risk of ulcers from taking Meloxicam. *Id.* However, Kudelka also asserts that when he was sent to the infirmary, "he was under the extreme influence of painkillers,

2

w[h]ere he could not walk, write, eat, use the bathroom, or sometimes not know what day it was or whether it was night or day." *Id.* at 11. He states that he was "suffering from extreme pain and was incoherent much [o]f the time." *Id.*

On November 25, 2016, Dr. Hoftiezer saw Kudelka for a follow-up appointment for his hypothyroidism. Dkt. No. 42 at ¶35. There is no mention in the progress note of Kudelka's foot pain; however, it does note that Kudelka was "taking [M]eloxicam for pain and this has some benefit…." *Id.* On December 6, 2016, Kudelka transferred to Waupun Correctional Institution where other practitioners assumed his care. *Id.* at ¶36. Dr. Hoftiezer's prescription for Meloxicam expired on March 7, 2017. *Id.* at ¶34. On July 11, 2017, three and a half months after Dr. Hoftiezer's prescription for Meloxicam expired, Kudelka requested and received a continuation of his prescription for Meloxicam. *Id.* at ¶37. It is not clear from the record who at Waupun continued the prescription.

On January 24, 2018, more than ten months after Dr. Hoftiezer's prescription expired, Kudelka was taken to Waupun Memorial Hospital after complaining of severe stomach pain for more than twenty-four hours. Dkt. No. 42 at ¶38. He subsequently underwent surgery for a ruptured gastric ulcer. *Id.* at ¶39.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party

3

opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

### A. Deliberate Indifference

"The Eighth Amendment protects inmates from deliberate indifference to *substantial* risks of serious damage to their health." *Phillips v. Wexford Health Sources, Inc.*, 522 F. App'x 364, 367 (7th Cir. 2013) (emphasis in original). Kudelka asserts that Dr. Hoftiezer demonstrated deliberate indifference when he prescribed Meloxicam to address his foot pain without warning him of the drug's potential side effects. According to Kudelka, as a result of taking Meloxicam, he suffered a ruptured gastric ulcer, which required surgery and nearly cost him his life. At the time Dr. Hoftiezer prescribed Meloxicam, Kudelka had been suffering from severe foot pain for more than a year. Kudelka does not argue that Dr. Hoftiezer was deliberately indifferent to his foot pain. Nor could he. After Dr. Hoftiezer prescribed Meloxicam, nothing in the record suggests that Kudelka complained that the Meloxicam was ineffective to treat his heel pain. To the contrary, about two months after Dr. Hoftiezer prescribed Meloxicam, Kudelka reported that it was helping to relieve his pain.

Instead, Kudelka argues that Dr. Hoftiezer was deliberately indifferent to Kudelka's risk of developing an ulcer from taking Meloxicam. To prevail on that claim, Kudelka must show that he had not just a risk of developing ulcers but a *substantial* risk of developing ulcers and that Dr.

4

Hoftiezer knew of and disregarded that substantial risk. *See Philips*, 522 F. App'x at 367. Kudelka presents no evidence to support that conclusion. Dr. Hoftiezer explains that NSAIDs can cause stomach irritation and erosion, which over time can lead to stomach ulcers. But, when Dr. Hoftiezer first prescribed Meloxicam, Kudelka had no prior history of taking NSAIDs, and Dr. Hoftiezer limited his prescription to just over six months, largely on an as-needed basis. Given this limited timeframe, Dr. Hoftiezer had no reason to conclude that Kudelka faced a substantial risk of developing ulcers from taking Meloxicam long-term. Further, to minimize whatever risk did exist, Dr. Hoftiezer instructed Kudelka to take Meloxicam with food if it upset his stomach because doing so would significantly reduce the stomach irritation that can lead to ulcers. Based on this record, no jury could reasonably conclude that Kudelka had a substantial risk (as opposed to a general risk) of developing ulcers or that Dr. Hoftiezer disregarded whatever risk Kudelka faced.

Kudelka also argues that Hoftiezer should have warned him that long-term use of Meloxicam increases the risk of developing ulcers, but, as Dr. Hoftiezer explains, his prescription reverted to an as-need basis after two weeks and expired in just over six months. Dr. Hoftiezer did not renew Kudelka's prescription, so he was not aware that Kudelka would continue to take Meloxicam beyond the timeframe he prescribed. And, in the three-month period Kudelka was under his care, Kudelka never complained of stomach pain or irritation, so Dr. Hoftiezer had no indication that Kudelka was experiencing side effects that could, in time, lead to ulcers. Given that Dr. Hoftiezer was not aware that Kudelka would continue to use Meloxicam long-term and given that he had no indication that Kudelka was experiencing side effects, no jury could reasonably conclude he demonstrated deliberate indifference when he failed to warn Kudelka of the risks associated with long-term use. *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) ("To satisfy the subjective component…[t]he officials must know of and disregard an excessive

5

risk to inmate health."); *see Phillips*, 522 F. App'x at 367 (holding that a plaintiff must show that his risk of developing side effects was "substantial enough that a reasonable patient would expect to be apprised of them").

Finally, Kudelka argues that Dr. Hoftiezer should have contacted his healthcare providers at Waupun to inform them of his plan of care. Kudelka's medical records, which include Dr. Hoftiezer's progress notes and prescription orders, were sent with Kudelka when he was transferred. It is unclear why these records were insufficient to alert subsequent providers to Dr. Hoftiezer's treatment decisions. In any event, it is long settled that "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (citations omitted). Dr. Hoftiezer is not liable for other providers allowing Kudelka to continue to use Meloxicam beyond the time period he prescribed or for their failure to warn Kudelka of risks associated with that continued use. Dr. Hoftiezer is entitled to summary judgment on Kudelka's Eighth Amendment claims.

### B. Medical Malpractice

When federal claims are dismissed and only state-law claims remain, a district court has broad discretion to decide whether to keep the case or relinquish supplemental jurisdiction over the state-law claims. *RWJ Mgmt. Co, Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478-80 (7th Cir. 2012). "[T]he presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Id.* at 479. This presumption "is based on a legitimate and substantial concern with minimizing federal intrusion into areas purely of state law." *Id.*

Dr. Hoftiezer has requested that the Court exercise its discretion to relinquish supplemental jurisdiction over the remaining state-law claim. Dkt. No. 45 at 18. Kudelka does not oppose this

6

Case 1:19-cv-00011-WCG   Filed 01/25/21   Page 6 of 7   Document 77

request. Dkt. No. 74 at 7 ("Rather than suggest what this Court should do, I will abide by whatever this Court determines is fair and right.").

The relevant statute of limitations would not prevent Kudelka from pursuing his claim in state court, and the Court has expended little or no time evaluating his state-law claim and so it is not obvious how that claim would be decided. Thus, having considered the relevant circumstances, including Kudelka's failure to present an expert opinion on the standard of care and causation, the Court decides that relinquishing supplemental jurisdiction over the medical malpractice claim is appropriate.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Dr. Scott Hoftiezer's motion for summary judgment (Dkt. No. 41) is **GRANTED** as to Kudelka's constitutional claims; the Court relinquishes jurisdiction over Kudelka's state-law claim.

**IT IS FURTHER ORDERED** that Kudelka's motion for summary judgment (Dkt. No. 40) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is dismissed. The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 25th day of January, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge